IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| IN RE: | § § | |
| QUALITY LEASE AND RENTAL HOLDINGS, LLC | § § § § | CASE NO. 14-60074-11 |
| QUALITY LEASE RENTAL SERVICE, LLC | § § § § | CASE NO. 14-60075-11 |
| QUALITY LEASE SERVICE, LLC | § § § | CASE NO. 14-60076-11 |
| ROCACEIA, LLC | § § § § | CASE NO. 14-60077-11<br>(Chapter 11) |
| DEBTORS | § § § | Jointly Administered<br>Under Case No. 14-60074-11<br>Judge David R. Jones |

**APPLICATION TO EMPLOY BRYAN C. FREDERICKSON AND
GULFSTAR GROUP AS INVESTMENT BANKERS**
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEYS.**
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Quality Lease and Rental Holdings, LLC ("QLRH"), Quality Lease Rental Service, LLC ("QLRS"), Quality Lease Service, LLC ("QLS"), and Rocaceia, LLC ("Rocaceia") (collectively "Quality" or "Debtors"), debtors and debtors-in-possession, respectfully make this application ("Application") to employ Bryan C. Frederickson and GulfStar Group (collectively "GulfStar"),

as an investment bankers to market QLS and QLRS and in support thereof respectfully show the Court as follows:

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and 11 U.S.C. 327(a). This is a core proceeding pursuant to 28 U.S.C. § 157.

2. Venue is proper in this district pursuant to t pursuant to 28 U.S.C. §§ 1408(1) and (2) and 11 U.S.C. § 101(2)(A).

## II. BACKGROUND

**A.   Overview**

3. The above captioned bankruptcy cases were each filed on October 1, 2014 (collectively "Petition Date") under chapter 11 of title 11 of the Bankruptcy Code, 11 U.S.C. §§101 et seq. (the "Bankruptcy Code"). The Debtors continue to manage their property as debtors-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

4. An order authorizing joint administration of these cases was entered on October 7, 2014 (Docket #18). No trustee or examiner has been appointed in the Debtors' bankruptcy cases and no official committee of unsecured creditors has yet been established.

5. The Debtors are related, privately-owned oil field services companies headquartered in Victoria, Texas, that provide energy companies throughout Texas with drill site services and equipment rentals.

6. QLS was originally founded in 1989 and converted to a Texas limited liability company on or about December 27, 2012. QLRS is Texas Limited Liability Company formed on February 8, 2008. Both entities operate as subsidiaries of QLRH, which is a Delaware limited liability company formed on December 4, 2012 and duly authorized to transact business in the state of Texas as of January 8, 2013. Rocaceia is the parent company and is a

Delaware Limited Liability Company formed on November 7, 2012 duly authorized to transact business in the state of Texas as of January 8, 2013. QLRH is 100% owned by Rocaceia.

7.      Debtors operations are primarily conducted through QLRS and QLS. The Debtors provide full service operations to the oil field industry including, turn-key, high quality, custom built mobile housing units to be used at the well site during drilling and completion operations. The Debtors offer oilfield equipment rental services, including rig houses, frac tanks, light towers, generators, compressors, trash containers, water and sewer systems, and pumps; and production services, including vacuum trucks, pump trucks, winch trucks, frac tanks, mud tanks, fluid transportation, fluid pumping and fluid disposal. The Debtors rig houses are the most stable and solid in the industry and are desired due to their high end interior finish and an insulation package that makes the interior living area much quieter than the completion. The Debtor also has a well trained staff of service technicians who are able to service any problems related to the leased equipment whether it be a generator, water delivery system, television, or "gray water". The service personnel are on call 24 x7 and may need to respond at odd hours to locations well off any main or secondary road. The objective of the Debtor is to make living in a hostile and remote location as comfortable and convenient as possible for their served customers' employees.

**B.     History**

8.      Until December 2012, QLS and QLRS were owned and operated by David Michael Mobley ("Mobley") and Greta Mobley as oilfield service companies. On December 31, 2012, QLRH, which is owned by Rocaceia, entered into a Purchase and Contribution Agreement (the "Purchase Agreement") by which it agreed to obtain all the stock of QLS and QLRS from Mobley in exchange for approximately $60 million ("Transaction"). As of

3

January 8, 2013, Rocaceia (including 100% owned QLRH) was owned by Allan S. Martin and Marie B. Martin, Atlantic Merchant Capital Investors, LLC, TSF Holdings, LLLP, S. Jim Farha Living Trust, Fleur De Lis Partners, LLLP, The Nancy Linden Rowden Revocable Trust, Andy Krusen, MSCII Equity Interests, LLC, and Main Street Equity Interests, Inc. As further discussed below, Main Street Lenders provided QLRH approximately $40 million to fund the Transaction[1]. Mobley retained a subordinated note ("Mobley Subordinated Note") for the $20 million balance of the purchase price[2] and a minority interest in QLRH. Mobley also executed an employment agreement ("Employment Agreement") whereby QLRH agreed to employ Mobley as its President. The Employment Agreement contained a three year non-compete from the date Mobley's employment terminated.

9. In April 2013, QLRH placed Mobley on administrative leave pending an investigation into alleged breaches of his Employment Agreement and fiduciary duty to QLRH by, among other things, diverting QLRH business to other companies affiliated with Mobley.

10. Subsequently, QLRH filed suit against Mobley in the United States District Court for the Middle District of Florida, alleging breach of the Employment Agreement, breach of fiduciary duty, and fraud in connection with the Employment Agreement ("Florida Litigation"). QLRH also alleged that Mobley made a number of false statements in connection with the sale of QLS and QLRH, including material misrepresentations regarding the revenue and earnings of the

---

[1] QLRH, QLS, and QLRS are all obligors on the debt to Main Street Lenders. Rocaceia is a guarantor of this debt. Main Street Capital Corporation ("MSCC") and Main Street Capital II, LP ("MSCII") are the original Main Street Lenders. Subsequently, MSCC and MSCII transferred their interest in this debtor to its subsidiaries Main Street Equity Interests, Inc. ("MSEI") and MSCII Equity Interests, LLC ("MSCIIEI"), who remain the current lenders on the debt.

2 On December 31, 2012, QLRH and Mobley executed that certain Unsecured and Subordinated Promissory Note, made payable to in the original principal amount of $20,000,000. On January 8, 2013, as an inducement for Main Street Lenders to fund the Transaction, Mobley, the Debtors and Main Street Lenders entered into a Subordination and Intercreditor Agreement whereby the Mobley Subordinated Note is subordinated to the debt owed to Main Street Lenders. The full balance of the Mobley Subordinated Note is outstanding and disputed as part of the State Court Litigation.

4

QLRH purchased entities. On April 10, 2013, Mobley initiated suit under Cause No. 46,632, styled as Greta Yvette Mobley, et al. v. Quality Lease and Rental Holdings, LLC and Allan Martin; in the 329th Judicial District Court of Wharton County, Texas ("State Court Litigation"), asserting claims of conversion and invasion of privacy against QLRH. QLRH dismissed the Florida Litigation and asserted causes of action based on the Employment Agreement as counterclaims against Mobley in the State Court Litigation, including breach of contract and breach of fiduciary duty. QLRH also sought equitable relief based on allegations of fraud in connection with both the Purchase Agreement and Employment Agreement, including allegations of misrepresentation in connection with the sale of QLS and QLR, regarding their revenue and earnings. Recently, QLRH has asserted a federal securities law claim in the State Court Litigation. The State Court Litigation was removed to this bankruptcy court and is pending under Adversary No. 14-06005 (the "Mobley/QLRH Dispute"). On October 30, 2014, the Mobleys and related parties filed a Motion to Remand the State Court Litigation.

11.     Subsequent to the initiation of the State Court Litigation, ownership of Rocaceia was transferred to CWC Operations, Inc., a Texas corporation owned by Chris Williams, a highly regarded turnaround and restructuring manager. Mr. Williams is currently the President and managing member of each of the Debtors.

C.     **Reason for Bankruptcy Filing**

12.     Since the Transaction, QLS and QLRS, the operating subsidiaries, have failed to ever achieve revenues and levels of profitability projected by Mobley. For 2014, the Debtors have collective sales of approximately $6.2 million though the end of August. Monthly sales average between $780,000 - $858,000.

13.     Cash flow has been sufficient to cover operational expenses but insufficient to cover legal expenses, interest expenses associated with financing of the Purchase Agreement,

5

and other non-operational expenses. The companies are unable to meet required debt service to its senior secured lender and have defaulted in their obligations. The damages caused by Mobley, discussed above, and the as stigma associated with the State Court Litigation, along with the astronomical legal fees and expenses associated with the lawsuit are the primary reasons for these bankruptcy filings.

14. The Debtors collectively own assets in excess of $12 million including approximately $350,000 in cash, approximately $1.5 million in outstanding A/R, plus approximately $200,000 in older A/R which has not been collected, $10.5 million in FFE valued "in place", and $350,000 in real estate holdings. Additionally, the Debtors hold contingent litigation claims, primarily against Mobley which may yield significant value. The Debtors also collectively have debt in excess of $61 million, which includes secured debt of approximately $37.4 million (principal balance), plus accrued interest, expenses and fees owed to Main Street Lenders, approximately $140,000 to various lenders with respect to vehicle loans, $3 million in unsecured debt owed to the former principal of Rocaceia and which was subsequently transferred to CWC Operations, Inc., unsecured disputed debt on the Mobley Subordinated Note of $20.0 million, and other disputed obligations alleged by the Mobley Sellers.

15. The goal of these Chapter 11 cases is to sell QLS and QLRS through a bidding process, with the proceeds utilized to fund a Chapter 11 plan which will provide a return to the creditors in these cases.

### III. ENGAGEMENT OF PROPOSED INVESTMENT BANKER

16. In connection with the performance of their duties and obligation as debtors in possession, the Debtors now request authority to employ Bryan C. Frederickson and GulfStar Group as their investment banker in this case, effective immediately, in connection with the marketing and sale of QLS or QLRS. GulfStar is one of the leading middle market investment

6

banking firms in the United States. GulfStar specializes in providing merger and acquisition advisory services, institutional private placements of equity and debt, and general corporate finance advisory services to companies with revenues ranging from $25 million to $350 million. Since its formation in 1990, GulfStar has completed over 600 transactions in more than 30 states and 10 foreign countries across a variety of industries. More information about GulfStar Group can be found at http://www.gulfstargroup.com.

17. Mr. Bryan C. Frederickson is a Managing Director of GulfStar and will be the primary consultant handling this engagement. Mr. Frederickson has 18 years of investment banking and corporate finance experience that includes execution of mergers and acquisitions, private placement, recapitalization and restructuring transactions. Mr. Frederickson joined GulfStar in 2005 from Navigant Capital Advisors, LLC, the broker-dealer unit of national consulting and financial advisory firm Navigant Consulting, Inc. At Navigant, he was involved in the firm's investment banking activities and responsible for principal investing by Sextant Corporate Finance, Navigant's $500 million debt opportunities fund. Prior to that, Mr. Frederickson served in Wachovia Securities' media and communications corporate finance, merchant banking and loan syndications groups. He started his career with KPMG LLP's Corporate Transactions Group. Mr. Frederickson is active in the Houston chapters of the Association for Corporate Growth and Turnaround Management Association, and is President of the board of directors of Crisis Intervention of Houston. A copy of Mr. Frederickson's resume is attached hereto as Exhibit "A". Accordingly, Debtor believes Mr. Frederickson is well qualified to provide the services contemplated by this application.

18. Debtors seek to retain GulfStar to provide the Debtors with investment banking services with respect to the sale of QLS and QLRS, including but not limited to the following:

- Planning and execution of sale of QLS and QLRS;

7

- Preparing a Confidential Information Memorandum;
- Conducting certain industry due diligence including evaluating and analyzing QLS and QLRS's financial statements;
- Conducting certain industry due diligence including qualifying, evaluating and analyzing prospective buyers;
- Handling contacts, confidentiality agreements and managing discussions with prospective candidates;
- Assisting QLS and QLRS with negotiations with prospective candidates

A copy of the Debtors' engagement letter with GulfStar is attached hereto as Exhibit "B".

19.     In connection with these services, GulfStar will charge the success fee set forth in Exhibit "B" to the Application for other professionals and staff personnel, plus out of pocket expenses for the additional services to be provided to the Debtors. The success fee will be $300,000, plus 3% of the Enterprise Value in excess of $10 million, as explained in the Engagement Letter. Additionally, in connection with Frederickson's employment, the Debtors will be required to pay an initial investment banking fee of $35,000, which is not refundable.

## IV.   THE FIRMS' DISINTERESTEDNESS

20.     Section 327(a) of the Bankruptcy Code provides: "the trustee, with the court's approval, may employ one or more professions… that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title." 11 U.S.C. § 327(a).

21.     To the best of Debtors' knowledge, neither Mr. Frederickson, nor GulfStar has any connection with Debtors, the creditors, or any other party in interest, or their respective attorneys and accountants, the United States Trustee, or any person employed in the office of the United States trustee in this bankruptcy case except as follows:

> (i)     Chris Williams, Manager of the Debtors, previously worked at GulfStar from November 2005 to March 2011. Prior to becoming affiliated with the Debtors, Mr. Williams also worked on several unrelated matters directly with Mr. Frederickson; and

(ii) Mr. Frederickson is a member of the Houston Chapter Turnaround Management Association in which Chris Williams and Edward L. Rothberg, counsel the Debtors' secured lenders, are also members.

These connections do not create a materially adverse interest to the Debtors' bankruptcy estates or any class of creditors or security equity holders.

22. Accordingly, Mr. Frederickson and GulfStar Group are each a "disinterested person" within the definition of section 101(14) of the Code and as required by §327(a) of the Code.

23. In compliance with 11 U.S.C. §329 and Rule 2014, GulfStar has attached the affidavit of Mr. Frederickson ("Frederickson Affidavit"), detailing the connections with the Debtors or any party-in-interest. To the extent the Frederickson Affidavit discloses any connection, Debtors believe it is not sufficient to prohibit employment as investment banker.

## V. REIMBURSEMENT OF EXPENSES

24. The Debtors have been advised by Frederickson that disbursements for expenses are not included in the Frederickson's hourly rates and will be separately billed as expenses of this proposed engagement. Such disbursements for expenses may include, without limitation, charges for photocopying, courier services, document retrieval costs, printing, computer-assisted legal research, postage, long distance, telecopier, deposition fees, filing fees, witness fees, subpoena fees, parking fees, tolls, travel expenses (including mileage), and any fees for outside contract services. In certain cases, charges are set by the service providers or outside contractors and in other cases; the Firm establishes a customary charge. Subject to the limitations set forth in General Order 2001-2, Frederickson will charge the actual cost of these expenses in a manner and at rates consistent with charges made to the Frederickson's other clients.

25. Based on the foregoing, the Debtors submit that the retention of Bryan Frederickson and GulfStar Group as investment banker is necessary and in the best interests of the Debtors' estates.

26. Therefore, the Debtors respectfully request the entry of an Order pursuant to sections 328(a) of the Bankruptcy Code authorizing it to employ and retain Mr. Frederickson and GulfStar Group as an investment banker to perform the services described herein that will be necessary during these Chapter 11 cases, and for authority to pay the fees incurred by the Debtors.

WHEREFORE, the Debtors pray that the Court (i) authorize the employment of Bryan Frederickson, and GulfStar Group, effective immediately, (ii) authorize payment of the initial $35,000 investment banking fee, and (iii) grant such other and further relief as is just and proper.

DATED: November 17, 2014

                                                Respectfully submitted,

                                                **HAWASH MEADE GASTON NEESE & CICACK LLP**

                                                */s/ Walter J. Cicack*
                                                Walter J. Cicack
                                                Texas Bar No. 04250535
                                                2118 Smith Street
                                                Houston, Texas 77002
                                                (713) 658-9001 - Telephone
                                                (713) 658-9011 - Facsimile
                                                ***Attorneys for Debtors***

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the document has been served to the parties listed on the Court's ECF notification system via the Court's ECF notification system, and by U.S. first class mail, postage prepaid, to the parties listed on the attached Service List, on November 17, 2014.

                      */s/ Walter J. Cicack*
                      Walter J. Cicack