

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**VICTORIA DIVISION**

**ENTERED**
**05/23/2015**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **Quality Lease and Rental Holdings, LLC** | § | **CASE NO. 14-60074-11** |
| | § | |
| **Quality Lease Rental Service, LLC** | § | **CASE NO. 14-60075-11** |
| | § | |
| **Quality Lease Service, LLC** | § | **CASE NO. 14-60076-11** |
| | § | |
| **Rocaceia, LLC** | § | **CASE NO. 14-60077-11** |
| **Debtors** | § | **(Chapter 11)** |
| | § | |
| | § | **Joint Administration Under** |
| | § | **Case No. 14-60074-11** |
| | § | **Judge David R. Jones** |

<u>**ORDER CONFIRMING DEBTORS' JOINT CHAPTER 11 FIRST AMENDED**</u>
<u>**PLAN OF LIQUIDATION AND APPROVING SALE THEREUNDER**</u>
<u>**(Approves Docket # 135)**</u>

The above-captioned Debtors filed their Joint Chapter 11 First Amended Plan of Liquidation on April 8, 2015 (Docket #135) (the "Plan"). On May 15, 2015, the Court conducted a hearing on confirmation of the Plan, and the Plan includes the sale of newly issued membership interests of QLRS and QLS together with the transfer of all assets of QLRS and QLS (except those specifically excluded) free and clear of liens, claims, interests, charges, and encumbrances. During this hearing, the Court heard testimony and arguments of counsel and considered the objections filed and evidence.[1] Having considered the foregoing, this Court finds as follows:

## I. Background

1.      The Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code on October 1, 2014. The cases are jointly administered but maintain separate claims registers. These debtors are defined in the Plan as the "Debtors".

---

[1] Capitalized terms not defined in this Order shall have the meanings set forth in the Plan.

2.      On April 6, 2015, by order entered as Docket #134, this Court approved the Debtors' Joint Amended Disclosure Statement ("Disclosure Statement") referring to the Plan. The Plan provides for a sale of newly issued Membership Interests in the operating subsidiaries, Debtor Quality Lease Service, LLC ("QLS") and Debtor Quality Lease Rental Service, LLC ("QLRS"), pursuant to certain bid procedures. The Court set the hearing to confirm the Plan for May 15, 2015 at 11:30 a.m. Objections to the Plan were due by May 4, 2015. Objections to the Plan were filed by: (i) Victoria County; (ii) the IRS; (iii) Main Street Capital Corporation on behalf of itself and as agent for Main Street Equity Interests, Inc. and MSCII Equity Interests, LLC (the "Main Street Lender"); and (iv) David Michael Mobley, Greta Yvette Mobley, and QLS Holdco (the "Mobley Parties"). All objections have been resolved by agreement as set forth herein, except for the objection filed by the Mobley Parties.

3.      As evidenced by the certificate of service filed on April 8, 2015 (Docket #138), the Debtors served (i) Debtors' Joint First Amended Disclosure Statement (Docket #136); (ii) Debtors' Joint Chapter 11 First Amended Plan of Liquidation (Docket #135); (iii) Order Under 11 U.S.C. §1125 and Fed. R. Bankr. P. 3017 Approving Disclosure Statement and Fixing Deadlines for Voting and Objections (Docket #134); (iv) Ballot for Accepting or Rejecting Debtors' Plan (Docket #137); and (vi) Memo to Creditors and Interest Holders including plan solicitation, notice of Confirmation Hearing and related deadlines to Creditors and other parties listed on the Debtors' Service List by first class mail, to all parties entitled to vote thereon and to the U.S. Trustee.

4.      Notice of the continuance of the confirmation and sale hearing from May 11, 2015 to May 15, 2015 at 11:30 was served on all creditors and parties in interest on May 4, 2015 (Docket #176).

5.      No party has contested the sufficiency of  service, and the Court has accepted the evidence of service and finds notice was sufficient and appropriate.

6.      On March 24, 2015, the Court approved cer  tain auction and bidding procedures and  found that notice of the Bidding Procedures     ,  including Notice of   the Auction and Sale Hearing as provided for therein (the "Sale Notice"), were adequate and reasonable.  Such order is at Docket # 119 and is hereafter referenced to as the "Bidding Procedures Order."

7.      As further ordered by the Bidding Procedures Order (Docket # 119) on March 24, 2015, Debtors mailed the Sale Notice to all interested parties.  Further, on April 10 and 24, 2015, Debtors published notices of the  proposed sale and auction in th  e Austin Business Journal, the Dallas Business Journal, the Houston Business J  ournal and the San Antonio Business Journal. The text of the ads are shown below.

---

**NOTICE OF AUCTION**

Quality Lease and Rental Holdings, LLC ("QLRH") is offering for sale all of the ownership interests in and to Quality Lease Rental Service, LLC ("QLRS") and Quality Lease Service, LLC ("QLS"), and/or all of the assets of QLRS and QLS, except for certain excluded assts ("Excluded Assets"), in an Auction Sale to be conducted on May 7, 2015 beginning at 2:00 p.m. (Houston time).  The Auction will be conducted at the offices of Gulfstar Group, Inc. ("Gulfstar"), 700 Louisiana, Suite 3800, Houston, Texas 77002.

QLRH, QLRS, and QLS are debtors-in-possession in Case Numbers 14-60074-11, 1460075-11, and 14-60076-11, respectively, pending in the United States Bankruptcy Court for the Southern District of Texas, Victoria Division.  The Bankruptcy Court has scheduled a hearing for May 11, 2015 at 1:00 p.m. (Houston time) to approve the Auction Sale.

Information about the Auction, the companies to be sold and their assets (as well as the Excluded Assets), can be obtained from Bryan Frederickson of Gulfstar at (713) 300-2030. In connection with the Auction, the Bankruptcy Court entered an Order approving Bidding Procedures on March 23, 2015.  If you are interested in bidding at the Auction, it is imperative that you obtain a copy of the Bidding Procedures.  All Bids must be submitted on or before May 5, 2015 and include, among other things a $250,000 Good Faith Deposit, a marked up copy of the proposed form of Purchase Agreement, and satisfactory evidence of committed financing or other ability to perform.

The primary secured lender has a first priority security interest in all property to be sold and it has reserved the right to credit bid up to a total of $11 million at the Auction.

In addition to Gulfstar, you may obtain information about the Auction, the Bidding Procedures, the sale requirements, the proposed Purchase Agreement, the bankruptcy cases, the assets and properties to be sold and those assets to be excluded from the Auction by contacting QLRH's bankruptcy counsel, Walter J. Cicack, HAWASH MEADE GASTON NEESE & CICACK LLP, 2118 Smith Street, Houston, Texas 77002, at (713) 658-9001.

8.      Notice of the matters described above to the creditors and parties in interest of the Debtors was adequate and appropriate.

9.      At the Auction and in accordance with the Bidding Procedures Order, the Debtors received a qualified bid from Stellar Oil Field Re ntals ("Stellar") in the amount of $4 m illion. The Debtors conducted an auction on May 7, 2015.   The only parties to attend the auction were Stellar and Main Street Lender which was aut    horized to credit bid up to $11 m    illion.   The bidding went back and forth and Main Street        Lender was the winner with a credit bid of $6,250,000.  Stellar was declared to be the Succe    ssful Backup Bidder with a final cash bid of $6,000,000.

10.     On May 13, 2015, the Debtors filed docket  #192 evidencing the ballot tabulation in which th e impaired Class 2 claim  of Main St reet Lender voted to accept the Plan and th  e impaired Class 4 claim of allowed  general un secured creditors voted to accep t the Plan.  N o Class 4 claims that voted on the Plan voted to re ject the Plan.  Main Street Lender filed a m otion to change or am end its ballot.  The motion wa s granted during the confirm ation hearing.  Main Street Lender is the on ly creditor in Class 2 a nd voted to  accept the Plan with respect to its secured claim in the amount of $21 m illion.  In addition, Main Street Lender voted to accept the Plan with respect to its unsecured claim    s in Classes 4A, 4B, 4C and 4D in the am     ount of $16,680,050.  Classes 4A, 4B, 4C, and 4D have accep     ted the Plan pursuant to 11    U.S.C. § 1126(c).

11.     The Plan sets f orth a comprehensive transaction which will r esult in all c reditors being paid as provided in the Plan.  The Court fi  nds that the Plan m eets all of the requirem ents for confirmation set forth in the Bankruptcy Code and that the treatment of claims is fair.

## II.  Votes, Objections and Resolutions

12.      The Plan separates claims and equity interests into six classes.  Each of the classes who voted, have voted to accept the Plan except for Class 5.

13.      Classes 1a, 1b and 1c consists of Allowed Secured Claim of Ad Valorem Property taxes owed by Debtors QLRH, QLRS, and QLS.    The Plan provides that any pre-petition taxes will be paid in cash in full f rom cash on hand or the Carve Out (f rom Main Street Lender) and that post-petition taxes shall be paid when due.  Class 1 is unimpaired and did not vote; however, Class 1 is deemed to have accepted the Plan.   However, a limited objection to confirmation was filed by Victoria County.  The Debtors announced on the record that this objection was resolved by including the following language herein:

> Notwithstanding anything to the contrary  contained within the Plan or approved
> Disclosure Statement, or any order pertaining to the sa le of the Debtor's assets
> and/or membership interests, the secured tax claims owing to Victoria County for
> 2015 ad valorem  taxes shall be paid in     the  ordinary course of business and
> Victoria County shall not be required to file a request for allowance and paym ent
> of its claim.  Victoria County shall retain  all liens until all taxes are paid in full,
> notwithstanding  any sale of the prope     rty  contemplated  by the plan, and
> notwithstanding any credit bid which m ay result in a transfer of the property.  In
> the  event the 2015 taxes are    not  timely  paid, Victoria  County shall be free to
> proceed with the state law rem edies for collection of all amounts due u nder state
> law  pursuant to the Texas Property Tax     Code  without further notice or court
> order.

14.     Class 2 consists of the Allowed Secured Claims of Main Street Lender. Main Street Lender voted in favor of the Plan, but filed a limited objection. The Debtors announced on the record that this objection was resolved by including the following language herein:

> Main Street Lender shall retain its lien on all assets not sold during the Auction. Pursuant to the Subordination and Intercreditor Agreement dated January 8, 2013, any and all distributions otherwise, if any, due the Mobley Parties shall be paid to Main Street Lender until such time as Main Street Lender is paid in full.

15.     Class 3a and 3b consists of Other Allowed Secured Claims against QLRH and QLS. Class 3 did not submit votes either accepting or rejecting the Plan. Class 3 is not impaired as QLS announced on the record that post confirmation Class 3 claims will be paid in accordance with the contractual obligations until paid in full and Class 3 claimants shall maintain their liens. Hence, they are unimpaired and deemed to have accepted the Plan.

16.     Class 4a, 4b, 4c and 4d consists of the Allowed General Unsecured Claims against QLRH, QLRS, QLS and Rocaceia. Class 4 is impaired and voted to accept the Plan. To be clear the Plan does not provide for substantive consolidation. The amount of the Carve Out allocated to Class 4 is $137,500. The distribution to Class 4 will be calculated as follows: (1) the total unsecured claim will be counted in each subclass; (2) the carve out will be divided among each subclass pro-rata based on the total amount of Allowed Claims in each subclass; (3) the amount of the carve out distributed to each subclass, will then be distributed on a pro rata basis, to each creditor within the subclass.

17.     Class 5 consists of the Allowed Claims of the Mobley Parties Related to the Sale Transaction. The holders of the disputed Class 5 Claims voted to reject the Plan. The Court finds that Class 5 is impaired. The Court finds that the Mobley Parties' Class 5 Ballot shall be counted and the Class 5 Ballots submitted by Main Street Lender shall not be considered. Class

5 rejected the Plan.  The Mobley Parties also objected to confirmation of the Plan.  Their objection is overruled.

18.     Class 6a, 6b, 6c and 6d consists of Allowed Equity Interests of QLRH, QLRS, QLS, and Rocaceia.  The Plan provides that the Equity Interests of QLS and QLRS will be cancelled and new Membership Interests issued to the purchaser and that the Equity Interests of QLRH and Rocaceia shall receive no distribution or any property under the Plan.  Therefore, Class 6 is deemed to have rejected the Plan.  No Class 6 votes were received by the Debtors.

19.     For the reasons announced on the record at the confirmation hearing, the Court finds that the Debtors satisfied all provisions of 11 U.S.C. §1129(a) and the Bankruptcy Code applicable to the Debtors, with exception of 1129(a)(8).  At the request of the Debtors, the Court found that the Plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims and/or interests that is impaired under the Plan and have not accepted the Plan. The Court finds that the Plan satisfies the requirements of 11 U.S.C. §§ 1129(b)(1) and (2)(B) and (C).  The Court specifically finds that 11 U.S.C. §§ 1129(c), (d), and (e) are not applicable.

20.     The Court finds that the sale of the new Membership Interests in QLS and QLRS to Main Street Lender was in good faith and without collusion.

21.     Pursuant to 11 U.S.C. § 1141(a), the provisions of the Plan are binding on all parties, including, but not limited to, creditors and equity security holders of the Debtors whether or not any such creditors or equity holders have accepted the Plan.

### III.  Order

It is therefore **ORDERED** that**:**

22.     The above findings are incorporated herein and made the order of the Court.

23.     The terms of the Plan are appropriate and approved, as provided for herein.

24.    The only other confirmation objection not mentioned above was filed by the IRS. It was announced by the Debtors that this objection was resolved by the insertion of the following language herein:

(a)    The deadline for the Debtors to object to the IRS Proof of Claim is 30 days from the Confirmation Date. The Debtors will prepare and file all outstanding tax returns within 60 days from the Confirmation Date, and pay any taxes shown as due.

(b)    The debt owed by the Debtors to the Internal Revenue Service (IRS) is a Non-Dischargeable debt, except as otherwise provided for in the Code, and that if the Debtors default, the IRS is not subject to the provisions of the Bankruptcy Code so that the IRS can take whatever actions are necessary to collect said debt in the event of default; the federal tax liens survive the plan confirmation, a bankruptcy discharge, and dismissal of the case. The Liens continue to be enforceable against all of the debtor's property under federal law.

(c)    A failure by the Debtors to make a payment to the Internal Revenue Service pursuant to the terms of the Plan, failure to file all outstanding tax returns within 60 days from the Confirmation Date, and/or failure to remain current on filing and paying post-confirmation taxes, shall be an event of default, and as to the Internal Revenue Service, there is an event of default if payment is not received by the 15th day of each month. If there is a default, the Internal Revenue Service must send written demand for payment, and said payment must be received by the Internal Revenue Service within 15 days of the date of the demand letter. The Debtor can receive up to three notices of default from the Internal Revenue Service; however, on the third notice of default from the Internal Revenue Service the third notice cannot be cured, and the Internal Revenue Service may accelerate its allowed claim(s), past and future, and declare the outstanding amount of such claim(s) to be immediately due and owing and pursue any and all available state and federal rights and remedies. In the event of an uncured default, any objection to the Internal Revenue Service's claims shall be overruled and denied in their entirety, and the Internal Revenue Service's claims shall be deemed allowed and the Debtors shall be required to pay these claims in full. These default provisions pertain to the entire claim(s) of the Internal Revenue Service, secured, unsecured priority and unsecured general.

(d)    The IRS is bound by the provisions of the confirmed plan and is barred under 11 USC 1141 from taking any collection actions against the debtors for prepetition claims during the duration of the Plan (provided there is no default as to the IRS). The period of limitations on collection remains suspended under 26 USC 6503 (h) for the tax periods being paid under the Plan and terminates on the earlier of (1) all required payments to the IRS have been made; or (2) 30 days after the date of the demand letter (described above) for which the debtor failed to cure the default.

25. In view of the foregoing, all objections, to the conf irmation of the Plan ar e overruled or withdrawn.

26. The Plan is confirmed.

27. The sale of the New Mem bership Interests in QLS and QLRS to Main Stree t Lender is hereby approved under sections 363(b) and 1123(a)(5) of the Bankruptcy Code.

28. All executory contracts of QLS and QLRS are assumed.

29. All other executory contracts are deemed rejected.

30. Sale of the QLS and QLRS Mem bership Interests to Main Street Lend er shall be closed within 20 days of the Confirmation Date.

31. At closing, in exchange for the credit bid of $6,250,000 from Ma in Street Lender, the Debtors shall convey the New Membership Interests in QL S and QLRS free and clear of all royalty obligations, m ortgages, security intere sts, conditional sale or other title retention agreements, pledges, liens (including but not li mited to, tax liens of any nature and m echanics liens), judgments, demands, encumbrances, easem ents, restrictions or charges of any kind or nature, if any, including, but not limited to, any restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of ownership (the foregoing collectively referred to as "Liens" herein), and all debts arising in any wa y in connection with an y acts of the Debtors, claims (as that term is defined in the Bankr uptcy Code), obligations , demands, guaranties, options, rights, contractual comm itments, restrictions, interests and ma tters of any kind and nature, whether arising prior to or subsequent to the commencem ent of this case, and whether imposed by agreem ent, understanding, law, equ ity or otherwise (the foregoing collectively referred to as "Claim s" herein). T he transfer of such property shall be free of a ll transfer or stamp taxes as provided for in section 1146(a) of the Bankruptcy Code. Notwithstanding the foregoing, the ad valorem taxing authorities shall retain all liens they currently hold, whether for

pre-petition tax years or for the current tax year, on any property of the Debtors until they receive payment in full of all taxes, and interest owed to them under the provisions of the Plan.

32.    Except as provided in the Plan and subject to occurrence of the Effective Date, the transfer of Assets, does  not and will not subject Main Street   Lender to any liability for claims against  the Debtors by reason of such transfer    under the laws of the United States, any state, territory or possession thereof or the District of Columbia applicable to such transactions.

33.    Upon closing of the tr ansactions described in the Pl an, except as provided in the Plan or herein, and subject to occurrence of th e Effective Date, all pers ons and entities holding Liens or Claims of any kind and nature with respect to the transferred property, are hereby barred from asserting such Liens and Claim s of any ki nd and nature against Main  Street Lender, QLS, QLRS and their successors or assigns, or the transferred property.

34.    Except as set forth in the Plan or herein, and subject to occurrence of the Effective Date, Main Street Lender, QLS an d QLRS and their respective pa rtners, officers, directors and affiliates are not assuming nor shall they in any   way whatsoever be lia ble or r esponsible, as a successor or otherwise, fo r any liabilities, debts or obligations of the Debtors o r any liabilities, debts or obligations in any wa  y whatsoever relating to or ar ising from the operation of any Debtors' Assets prior to the transfer.

35.    Except as set forth in the Plan or herein, and subject to occurrence of the Effective Date, no person or entity, including without lim  itation, any federal state or local governm ental agency, department or instrumentality, shall assert against Main Street Lender, QLS and QLRS or their successors in interest any liability, debt or obligation relating to or arising from the use of the assets or any liabilities calcu lable by ref erence to the Debtors or their assets or operations, and  all persons and entities are    hereby enjoined from  asserting  any such liabilities, debts or obligations against the transferee.

36.     The Debtors are authorized to execute, deliver, and file all documents including deeds, bills of sale and other documents necessary to transfer title on or after the Effective Date as may be necessary, required, or appropriate to carry out the provisions of the confirmed Plan, and take all necessary ministerial acts to effect the terms of this order or the sale provided for under the Plan and hereunder.  To the extent the Plan provides for a creditor to release a lien, such creditor shall release such at the request of the Debtors, Main Street Lender, QLS or QLRS.

37.     The Court hereby orders that the sale is in good faith and without collusion such that the protections afforded by pursuant to Section 363(m) of the Bankruptcy Code is applicable and that no action may be brought under Section 363(n).

38.     All rights of the holders of Claims or Interests of all classes under the Plan, including, without limitation, the right to receive distributions on account of such Claims or Interests, shall hereinafter be limited solely to the right to receive such distributions, and retain such liens and other rights, exclusively as provided in this Order and the Plan.

39.     Pursuant to Article 3.1 of the Plan, any holder of an Administrative Claim against the Debtors, except the U.S. Trustee with respect to quarterly fees and for expenses incurred in the ordinary course of operating the Debtor's business, shall file application for payment of such Administrative Claim on or within thirty (30) days after the Confirmation Date, with actual service upon counsel for the Debtors or such Holder's Administrative Claim shall be forever barred and extinguished and such Holder shall, with respect to any such Administrative Claim, be entitled to no distribution and no further notices.  All pre-confirmation U.S. Trustee fees due as of the Effective Date, shall be paid when due or on the Effective Date.  To the extent the Carve Out is not sufficient to cover the Allowed Administrative Claim of Gulfstar Group, Inc., any shortfall shall be paid by Main Street Lender.

40.     Except as provided otherwise in the Plan     or herein, and s   ubject only to the occurrence of the Effective Date of the Plan, th  e Debtors are hereby discharged from all debts that arose before the date of    the entry of this Order, includ  ing, without lim itation, any debts based on any of the Debtors' guarantees of coll ection, payment or performance of any obligation of the Debtors, and any debt of a kind specified in §§ 502(g), 502(h) or 502(i) of the Code, other than (A) Adm inistrative Expenses (as such term is def ined in th e Plan) representing liabilities incurred in the ord inary course of business by the Debtors, a  nd (B) Adm inistrative Expenses representing allowances of com pensation or reimbursement of expenses allowed pursuant to §§ 330 and 503(b)(3) of the Code, whether or not (i) a Proof of Claim based on such debt is filed or deemed filed under § 502 of the Code; (ii) such claim is allowed under § 502 of the Code; or (iii) the holder of such claim has accepted the Plan.

41.     Subject only to the occu rrence of the Effec tive Date of the Plan, any judgm ent at any time obtained, to the extent that such judgm ent is a determination of the personal liability of any of the Debtors with respect to any debt    discharged hereunder is hereby rendered null and void.

42.     Except as provided in the Plan or this     Order, as of the Confirm ation Date, all entities which have held, currently hold or m  ay hold a claim or other debt  or liability that is discharged are permanently enjoined from taking any of the following actions on account of such discharged claims, debts or liabi lities or term inated interests or rights: (i) comm   encing or continuing in any m anner, any action or other pr  oceeding against any of the Debtors or their assets; (ii) enforcing, attaching, collecting or    recovering in any m  anner any judgment, award, decree or other award against a  ny of the Debtors or their asse ts; (iii) creating, perfecting or enforcing any lien o r encumbrance against any of the Debtors or their assets; (iv) asserting a setoff, right of subrogation or recoupm ent of a ny kind against any debt,  liability or obligation

due to any of the Debtors or their assets; and (v) comm encing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the Plan.

43.     Except as otherwise provided for herein, the Release and Ex culpation set forth in Section 14.7 of the Plan are approved.

44.     The respective affiliates, officers, directors, shareholders, members, representatives, attorneys, financial advisors, and agents of th e Debtors have acted in good faith, and each of those parties are hereby forever released from and shall not be liable to any holder of a Claim, or other party with re spect to any action, fo rbearance from action, decision, or exercise of discretion taken from the Petition Date to th e Effective Date in connection with (i) the operation of the Debtors; (ii) th e proposal or implementation of any of the transactions provided for, or contemplated in, the Plan; or (iii) the administration of the Plan or the assets and property to be distributed pursuant to the Plan.

45.     The failure specifically to include a ny particular provisions of the Plan in this Order shall not dim inish or im pair the efficiency of such provision, it being the intent of the Court that the Plan be authorized and approved in its entirety, excep t as modified or otherwise provided for herein.

46.     So long as such am endments or m odifications do not m aterially affect the interests of creditors or the in terest holders, the proponent of the Plan may propose am endments or modifications to the Plan after the entry of this Order, subject to, upon notice and hearing, the approval of this Court, in order to rem edy any defect or om ission, or reconcile any inconsistencies in the Plan or in this Order, as may be nec essary to carry out the purpose and intent of the Plan.

47.     After the entry of this order, pleadings shall only be served upon the United States Trustee, and any party directly affected by the pleading and its counsel, if known (i.e, claim s

objections need only be served upon the person     who filed the claim  that is subject to the objection, its counsel, if known, and the United States Trustee).

48.      To the extent that objections to the Plan are not specifically s ustained herein, they are overruled and denied.

49.      The reversal or modification of this Order on appeal will not affect the acts taken pursuant to the Plan, or any other agreem ent, document, instrument or action autho rized by this Order or under the Plan as to the Debtors or any other person acting in good faith, whether or not such person knows of the appeal, unless this Order is stayed pending appeal.

50.      This Order shall be effective and enforceable immediately upon entry.

51.      This  Court retain s  jurisdiction  (i)  to enf orce  and im plement  the term s  and provisions of the Plan a nd this Order, all am endments thereto, any waivers and consents herein provided, and any agreements executed in connection herewith, (ii) to compel implementation of the transactions described in the Plan, (iii) to resolve any disputes arising under or related to this Order or the Plan, and (iv) to interpret, im plement and enforce the provisions of this Order and the Plan.

**Signed:  May 22, 2015.**

**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

SUBMITTED BY:                                    APPROVED AS TO FORM ONLY:

**HAWASH MEADE GASTON NEESE & CICACK LLP**     **NATHAN SOMMERS JACOBS, P.C.**

 /s/ Walter J. Cicack                              /s/ George R. Gibson
Walter J. Cicack                                 Ronald J. Sommers
State Bar No. 04250535                           State Bar No. 18842500
2118 Smith Street                                George R. Gibson
Houston, Texas 77002                             State Bar No. 00793802
(713) 658-9001 - Telephone                       Richard A. Kincheloe
(713) 658-9011 - Facsimile                       State Bar No. 24068107
**Attorneys for Debtors**                        2800 Post Oak Blvd., 61st Floor
                                                 Houston, Texas 77056
                                                 (713) 960-0303 - Telephone
APPROVED AS TO FORM AND SUBSTANCE:               (713) 892-4800 - Facsimile

**HOOVER SLOVACEK LLP**                                       and

 /s/ Edward L. Rothberg                          Ronald A. Simank
Edward L. Rothberg                               State Bar No. 18359400
State Bar No. 17313990                           615 North Upper Broadway, Suite 700
Annie E. Catmull                                 Corpus Christi, Texas 78401
State Bar No. 00794932                           (361) 884-2800 - Telephone
Galleria Tower II                                (361) 884-2822 - Facsimile
5051 Westheimer, Suite 1200                      **Attorneys for David Michael Mobley,**
Houston, Texas 77056                             **Greta Yvette Mobley, and QLS HoldCo,**
(713) 977-8686 - Telephone                       **Inc.**
(713) 977-5395 - Facsimile
**Attorneys for Main Street Capital Corporation,**
**on behalf of itself and as agent for Main Street**
**Equity Interests, Inc., and MSCII Equity**
**Interests, LLC**